

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Orville S. Carpenter
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:

Opinion No. O-1290
Re: Are agents of certain class in
the employment of the Southwestern
Life Insurance Company as provided
in Article 5221-b, Section 17, Sub-
section (g) (1)?

You have submitted to this Department data including
copy of contract of agency between the Southwestern Life Insur-
ance Company and Sam Pondrom to be used by this Department in
determining whether such agent is in "employment" of the South-
western Life Insurance Company as provided by our Texas Unemploy-
ment Compensation statute, Article 5221-b, Section 17 (g) (1),
Vernon's Revised Civil Statutes, 1925.

We have studied the complete file submitted to us, and
we deem it necessary to recite fully the relationship existing
between the Southwestern Life Insurance Company and Sam Pondrom,
its agent, as indicated by copy of their contract submitted in
the file.

The following facts are gleaned from a study of the
contract and information submitted to us:

The company maintains offices in several of the larger
cities of Texas, which branch offices are under supervision of
the company's branch managers. The agents are at liberty to
avail themselves of office space in these offices if they desire;
however, many of them do not do so and maintain their own offices.
In cities where branch offices are not maintained the company
does not furnish any type of office or pay any office expense
for the agents, but if they have such space they furnish it at
their own expense.

Honorable Orville C. Carpenter, Page 2

If the agent furnishes his own office he may carry the company's name on that office door if he desires, but he is not required to by the company, and this is also true of listings in telephone directories.

The agent using such company offices as are first mentioned are not restricted solely to the transaction of company business therein, so long as his use of it does not interfere with the company's business. Of course, if he furnishes his own office, he is at liberty to use it in any manner that he sees fit.

Agents are not required to keep any record whatsoever in connection with the company's business. They are required to report to the company only on the forms submitted in connection with their outstanding policies.

The agent is not required to produce a minimum volume of business. However, if the business produced by any main agent is deemed by the company insufficient to justify the continuance of the contract, the contract is terminated.

No agent is required to, in any manner, account for his time, nor is he required to cover any specified territory assigned to him at any time.

The agent is not required to follow up any information furnished him by the company, but the company does, when possible and feasible, furnish to its agents such information in the possession of the company which may increase company business.

The agents are not required to investigate claims or to take any action whatsoever in connection with claims.

The company does not sponsor sales campaigns, and in connection therewith offer prizes and bonuses as a special inducement to agents to increase their individual production.

Agents are not allowed drawing accounts for advances against unearned commissions. But in some few meritorious cases the company will assist its agents by making them direct loans.

Agents are permitted to advertise in their own name without submitting the copy to the company. However, if the

company's name appears in the advertising copy, the agent is required to submit the copy to the company for its approval before it is published. This requirement is made in order that the company may be assured that no misrepresentation or misleading statement is published in connection with its business.

Agents are prohibited from entering the service of any other life insurance company or taking application for insurance with any other life insurance company without the written consent of the company. Agents, however, are permitted to execute brokerage contracts for the placing of legitimate surplus business with other companies.

Agents may solicit business in such manner as they desire, and the contracts of the company and the rules governing the agency organization do not permit the company to prescribe rules and regulations governing the manner in which the agents solicit business and carry on their activity. The agents may come and go as they please, and are not directed or controlled as to whom they shall solicit for insurance, nor as to the manner in which they make such solicitation.

The agents are not required to spend a fixed amount of time and work on the production of life insurance business.

And the company does not furnish agents means of transportation nor exercise control over the means of transportation selected by such agents. Any expense for transportation is that of the agents.

The liability of Southwestern Life Insurance Company for unemployment taxes upon wages paid to Sam Pondrom and agents serving under like contracts depends upon an application of the particular facts present to the pertinent provisions of our law.

Article 5221-b-17 (g) (1) reads as follows:

"'Employment' subject to the other provisions of this sub-section, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, provided that any services performed by an individual for wages shall be deemed to be employment

subject to this Act unless and until it is shown to
the satisfaction of the Commission that such indi-
vidual has been and will continue to be free from
control or direction over the performance of such
services, both under his contract of service and
in fact."

We cannot escape the conclusion that the Legislature
intended and that we should consider and possibly apply the com-
mon law principles as laid down in our master and servant cases
in determining whether "such individual has been and will con-
tinue to be free from control or direction over the performance of
such service, both under this contract of service and in fact."

An examination of the authorities of other states upon
this subject discloses opinions from the Supreme Court of Colorado,
Connecticut, North Carolina, Washington and Mississippi upon
the construction of our or a similar definition of "employment"
with relation to the Unemployment Compensation Law.

A recapitulation of the employment ties upon this
agent discloses that as an individual, Sam Pondrom, the agent,
agrees to engage in the solicitation of insurance, upon a com-
mission basis. He is the judge of the method, the manner, the
time and the extent of the particular solicitation. If he at
times uses the company's office as a convenience, this is not
essential to efficient salesmanship of insurance. If he uses
certain books, forms, and blanks furnished by the company, this,
too, but in the interest of convenience; it does not affect the
essential status of the insurance solicitor. He may, and
does, with the consent of the insurance company, engage in
some other business or vocation, thus devoting only a part of
his time to the writing of insurance. Such control as is exer-
cised over him by the company is not direct, but only such
general supervision as is required by the company in determin-
ing the quality and quantity of the insurance which it accepts
for coverage. He is not instructed as to what persons to solicit
but persons of his territory he may work each day or at any time,
nor he is required to report to any company office as to how he
spends his time or how much of his time is devoted to the com-
pany's business. We fail to see that detailed supervision and
direct control which is essential to the master - servant rela-
tionship here.

We learn from the opinion of Chief Justice Maltbrie
of the Supreme Court of Connecticut in N. W. Life Ins. Co. vs.
Tone, 4 Atl. (2d) 640, that in approximately twenty-nine of the

Honorable Orville S. Carpenter, Page 5

states and the District of Columbia, where statutes similar
to ours have been adopted, either by specific statutory exemp-
tion or administrative ruling, life insurance agents compensated
by commissions are exempted. There are, however, five states
holding that they are within the statute. We know from collat-
eral information that prior to the 1939 amendment of Article
5221-b, Vernon's Revised Civil Statutes, the Texas Unemploy-
ment Compensation Commission had enacted a regulation exempting
insurance companies from coverage under the Act. The 1939
amendment has provided a new definition of "employment."

The Supreme Court of the State of Colorado in Indus-
trial Commission vs. Northwestern Mutual Life Insurance Co.,
88 Pac. (2d) 560, in facts closely akin to these found here
held that the agents were servants of the insurance company and
were in "employment" of the company. A concurring decision is
found in the case of Unemployment Compensation Commission vs.
Jefferson S. L. Ins. Co., 2 S. E. (2d) 584 (North Carolina
Supreme Court). However, we consider the dissenting opinion
of Justice Barnhill of the North Carolina Supreme Court a much
stronger and more logical opinion. We are able to differen-
tiate our conclusion from that in the two cases above mentioned,
for the reason that in both of those states the statute differs
from our Texas statute in its definition of "employment."

The distinction is made between servants and independent
contractors in the Re-statement of the Law of Agency, "Inde-
pendent Contractor," p. 485. We think it most appropriate to
the solution of our question when it says, "An agent who is
not subject to control as to the manner in which he performs
the acts which constitute the execution of his agency is in a
similar relation to the principal as to such conduct as one
who agrees only to accomplish mere physical results. For the
purpose of determining liability, they are both independent con-
tractors . . ."

The control of the physical conduct of the individual
is present in the case of a servant, but lacking in the case of
an independent contractor. Carter Publications, Inc. vs. Davis,
(Tex. Civ. App.) 68 S. W. (2d) 640. When the will of the em-
ployer is represented only as to the result of the work and
not as to the means by which it is carried out or the details
involved in its performance, the person rendering the service

is an independent contractor. Lone Star Gas Co. vs. Kelly, 46 S. W. (2d) 656; and see annotations in 20 A. L. R. 684; 19 A. L. R. 235. We recognize the fact that these cases are principally cases involving tort liability of the employer for the acts of an independent contractor or servant.

In the case of the insurance agents under consideration, in our opinion, that necessary degree of control over the physical conduct of the agents is lacking to constitute him a servant. In effect, the insurance company gives him a manual of instructions as to the manner of preparing and filing applications, but thereafter relies almost entirely upon the desire of the agent for commissions as a sufficient motivating force to keep the agent alert to new prospects.

We also call attention to the fact that the agents must be licensed, not by the insurance company, but by the State of Texas indicating to us that the state treats the occupation of soliciting insurance as a business independent of the company the agent may represent. The Insurance Commissioner, rather than the company, determines the qualifications and moral character of the agent. If the Insurance Commissioner revokes his license, his agency is automatically terminated.

Our construction of the interpretation to be given Section 17 (g) (1) in this instance is not without precedent. Under facts similar to the present factual situation, the Treasury Department of the United States has refused to extend the coverage to include the agents of insurance companies. We are aware of the difference in the language of the Federal Social Security Act and the Texas Unemployment Compensation Law. However, those rulings are pertinent and are entitled to consideration in arriving at a proper construction of our Act. We, also, realize that each ruling must depend on the facts surrounding the relationship between the company and agent.

In the case of Northwestern Mutual Life Insurance Company vs. Tone, 4 Atl. (2d) 640, the Supreme Court of Connecticut applied the master - servant and independent contractor test of the company's control of the agents. They, too, did not think that commission agents of a life insurance company were in the "employment" of the company as that term is defined in the Connecticut statute. For other good discussions of the

Honorable Crville S. Carpenter, Page 7

independent contractor and master - servant relationship in unemployment compensation matters, see Washington Recorder Publishing Co. vs. Ernst, 91 Pac. (2d) 718; Texas Co. vs. Wheeless, et al, 187 So. 880.

You are, therefore, advised that under the facts submitted to us that the agent, Sam Pondrom, and all agents under a like contract with the Southwestern Life Insurance Company are not in the "employment" of that company as that term is defined in Article 5221-b, Section 17, Subsection (g) (1), Vernon's Revised Civil Statutes, 1925.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Morris Hodges*

Morris Hodges
Assistant

MH:N

APPROVED JAN 24, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN